# YEARWOOD, for Use of AMERICAN INS. CO. OF NEWARK, N. J., v. LOUISVILLE & N. R. CO.
## —222 S. W. (2d) 33.

Middle Section.   February 26, 1949.

Rehearing denied April 30, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

116

Hopkins & Hopkins and Hugh Lee Webster, all of Columbia, for plaintiff.

David M. Keeble and Walker & Hooker, of Nashville, Peebles & Peebles, of Columbia, for defendant.

HOWELL, J.  This is a suit by Nile E. Yearwood against the Louisville and Nashville Railroad Company to recover damages for the destruction by fire of a granary and tenant house on his farm in Maury County, Tennessee, which was adjacent to the right-of-way of the defendant railroad upon which it operated freight and passenger trains daily.  The declaration alleged that between the hours of 2 P.M. and 6 P.M. on March 25, 1947 several trains of the defendant passed along this right-of-way, that a strong wind was blowing from the railroad toward the property of the plaintiff and that these unidentified locomotives pulling defendant's trains were not properly equipped with appliances to prevent the

escape or discharge of sparks, that the defendant had failed to maintain its equipment and appliances properly in that it allowed these unidentified locomotives to discharge live sparks, cinders or coals onto the property of the plaintiff, setting fire to his granary and its contents and tenant house and causing their destruction.

The defendant filed a plea of not guilty.

Upon the trial before the Circuit Judge and a jury there was a verdict in favor of the plaintiff for $7,500.00. After proper procedure the defendant appealed in error to this Court and has assigned errors.

The three assignments of error filed raise the questions that there is no evidence to support the verdict of the jury, that the trial Judge erred in refusing to grant defendant's motion for a directed verdict and that the trial Judge erred in admitting the testimony of certain witnesses with reference to the emission of cinders and sparks from locomotives passing on the track in question and the occurrence of fires on days other than the day of this fire, March 25, 1947.

There was material and substantial evidence from which the jury could find that on the defendant's railroad right-of-way there was a down grade in each direction, North and South, from a point opposite the locations of the buildings which were burned, that the locomotives of the defendant did discharge at and near this point from their smoke stacks, cinders and sparks, that on the day in question a high wind was blowing from the right-of-way toward plaintiff's buildings, that between the right-of-way and the buildings the land was covered with dead Johnson grass and lespedesa which was highly combustible, that March 25, 1947 was a clear and dry day and that there was no other source from which the

fire could have been communicated. There was no testimony by any one who saw sparks or cinders coming from a locomotive of the defendant immediately preceding the fire, but there was evidence that at various times covering a long period, sparks and cinders had been observed being emitted by locomotives of the defendant while passing along this right-of-way, some of such sparks and cinders coming out with such force and in such quantities as to cover the ground upon which these buildings were situated. There was testimony that live sparks at one time fell on the roof of the granary. Thus it is seen that there was evidence upon which the jury could have based its verdict.

This case is very similar to the case of Louisville and Nashville v. Fort, 112 Tenn. 432, 433, 80 S. W. 429, 431, in which the Court said:

"Proof that one or more of four locomotives, if any, set out the fire, is too uncertain, and does not amount to identification. Nor can plaintiffs whose property has been destroyed in this manner be restricted by railroad companies in the production of evidence of their negligence as here attempted.

"To confine the proof of negligence in these particulars to the equipment and condition of locomotives identified by railroad companies in this or any other way would be to give them absolute control of all proof of their character, and an unfair advantage in all cases where the plaintiff could not produce positive evidence of the origin of the fire.

"Plaintiffs in these cases would be unable to controvert the evidence produced by the defendants. They have no access to the records and information necessary to establish the identity of the locomotives drawing the

numerous trains of a great railroad system and ordinarily, where identity is established, they have not the skill to determine whether the locomotive is properly equipped or in good repair, and how are they to know that it is then in the same condition as when the fire occurred.

"The evidence filed would always be against them, for it is not to be presumed that railroad companies will place in the record testimony which would establish their liability for the damages claimed.

. . . . . .

"But the contention of plaintiff in error is untenable, and not the law. The testimony admitted was relevant and competent evidence in chief to show habitual negligence upon the part of the company in the equipment, repair, and management of its locomotives, and that they would and did discharge sparks and cinders, which, under similar conditions, would originate fires so far from its track as the property destroyed was situated, and the consequent possibility and probability that the fire complained of was communicated in this manner. This was peculiarly so in this case, as no one saw the sparks fall upon the buildings, and the origin of the fire was otherwise unknown and unaccounted for, and also because all the engines used upon that line were of similar construction and equipment. It was also competent in rebuttal, as tending to contradict the evidence offered by plaintiff in error that its locomotives were properly constructed, equipped, in good repair, and carefully handled."

▮ In this case the Supreme Court further said in commenting upon an objection to the charge:

" 'What the court meant by the above was that the railroad company must at all times use ordinary care in the management of its engines to prevent them throwing out sparks, and that ordinary care on the part of the railroad company is care commensurate with the risk or hazard, and what would be or what would not be ordinary care is always a question for the jury.'

"This is merely the application of the elementary doctrine that it is the duty of every one in his conduct and the use of his property to exercise ordinary or reasonable care and prudence so as not to injure others, the degree of care required to be commensurate with the character of the business carried on, the danger to which it exposes the property of others, and the then existing conditions, to railroad companies in the operation of their locomotives. They are authorized to use and carry fire on them for the purpose of generating steam, and when they have them properly constructed and equipped with spark arresters and appliances of the latest and most approved character to prevent the escape of coals and cinders, in good repair, and carefully and skillfully handled, and observe such other precautions as the surroundings may call for to avoid the communication and spread of fire, they are not liable for property unavoidably destroyed by escaping sparks and cinders; but on account of the great stretches of country and number of towns over and through which their trains are constantly passing at all hours of the day and night and seasons of the year, and the vast amount of valuable property along their roads, much of which has been constructed there for the purpose of doing business with them, upon their implied invitation, and the fearfully destructive power of this element when once be-

yond control, they should be required to exercise at all times a degree of care and prudence commensurate with the danger to which this property is exposed by them in the lawful conduct of their business. And, as the danger necessarily attending the use of fire in loco-motives is far greater in some places and upon some occasions than others, what is reasonable care in their equipment and management must always depend upon the facts and circumstances of each case. What would be ordinary care in the operation of them in the country, or in the wet season, might be gross negligence in a town or city, or in a drought, where and when the danger of communicating the fire is, in the very nature of things, much greater.

.     .     .     .     .     .

"It is the duty of railroad companies not only to have their engines properly constructed and equipped with appliances for the prevention of the escape of fire according to the latest and most approved state of the art, and to keep the same in repair, but when so equipped to have them carefully and prudently handled."

And in the same case, 112 Tenn. 432, on page 454, 80 S. W. at page 434, the Court said:

"And where it appears that the fire was communi-cated from the locomotive of a railroad company to the property destroyed, the burden of proof is upon the com-pany to show that it has performed and· discharged all of its duties as herein defined, because the owners of the property along the roads have no opportunity to exam-ine the locomotives of the company, and generally are unable to determine whether or not they are properly equipped, or in good repair; and in most cases the par-ticular engine which communicated the fire is unknown,

while it is the duty of the railroad companies to know the character and condition of their engines, and the manner in which they are operated.''

■ ■ Under the facts of this case it was not error for the trial Judge to overrule the defendant's motion for a directed verdict in its favor nor was it error to permit testimony of the emitting of cinders and sparks from locomotives of the defendant while passing the buildings of the plaintiff on days other than the day of the fire.

Under this record the question of what caused the fire that destroyed the property of the plaintiff was peculiarly one of fact for the jury.

■ In the case of Tennessee Central Railway Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. 2d 931, this Court in an opinion by Hickerson, Judge, said:

''Upon the consideration of a motion made by defendant for directed verdict 'plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration,' Prudential Ins. Co. v. Davis, 18 Tenn. App. 413, 429, 78 S. W. 2d 358, 368; and 'the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence,' Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.

''Facts may be proved by circumstances in civil cases where the circumstances are such as usually attend the fact to be proved, and tend to exclude contrary hypotheses. It is not necessary for such circumstances to exclude all other hypotheses. It is sufficient if one theory is more probable than other theories from the

circumstances proved; and it is a question for the jury to decide which theory or hypotheses is the more probable. The question is determined upon a preponderance of the evidence which is submitted by proving the circumstances. Knights of Pythias v. Steele, 107 Tenn. 1, 63 S. W. 1126; Marquet v. Aetna Ins. Co., 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749, Ann. Cas. 1915B, 677; Gulf Refining Co. et al. v. Frazier, 19 Tenn. App. 76, 83 S. W. 2d 285; Nashville Railway & Light Co. v. Harrison, 5 Tenn. App. 22, 34-36.

.    .    .    .    .

"As we view this case, the facts and circumstances which were proved usually attend the fact to be proved: that the sparks from this train set this grass on fire; and we think they tend to exclude all contrary hypotheses.

"Without an extended analysis of cases dealing with the particular question involved here — whether the sparks from defendant's train set fire to the grass—we hold that plaintiffs were entitled to go to the jury on this question and that the trial judge correctly so held. Carolina, C. & O. R. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S. W. 591; Harriman & Northeastern R. Co. v. McCartt, 15 Tenn. App. 109; Briggs v. Clawson Bros., 8 Tenn. App. 251; 22 Am. Jur., 653, Fires, sec. 87; Dean v. Chicago, etc., R. Co., 39 Minn. 413, 40 N. W. 270, 12 Am. St. Rep. 659; St. Louis, etc., R. Co. v. Coombs, 76 Ark. 132, 88 S. W. 595, 6 Ann. Cas. 151; Babcock v. Canadian Northern R. Co., 117 Minn. 434, 136 N. W. 275, Ann. Cas. 1913D, 924; Kansas City, Ft. S. & M. R. Co. v. B. F. Blaker & Co., 68 Kan. 244, 75 P. 71, 64 L. R. A. 81, 1 Ann. Cas. 883; New York, C. & St. L. R. Co. v. Roper, 176 Ind. 497, 96 N. E. 468, 36 L. R. A., N. S., 952.

"Since the plaintiffs introduced evidence sufficient to take the case to the jury on the question whether sparks from the train caused the fire, and the jury having resolved that question in favor of plaintiffs, a prima facie case of negligence was made out; and the burden shifted to defendant to show that it was free from negligence in the operation of its train."

It results therefore that the assignments of error are overruled and the judgment of the circuit court is affirmed.

A judgment will be entered here in favor of the plaintiff and against the defendant company for $7,500.00 and interest from April 2, 1948 and the costs of the cause.

Affirmed.

Hickerson and Felts, JJ., concur.

HOWELL, J.

In this case we are presented with a petition to rehear in which we are asked to hold that:

"It is the burden of the plaintiff in this case, in order to make the circumstantial evidence on which he relies competent, to prove that the spark arresting equipment of the defendant's locomotives was similar or the same over the period of time involved, with reference to these other occasions, as was the equipment of the defendant's locomotives which passed shortly before said fire started."

This matter was carefully considered upon the hearing and we quoted with approval at length from the opinion of the Supreme Court in the case of Louisville & Nashville Railroad v. Fort, 112 Tenn. 432, 433, 80 S. W. 429, and from the opinion of this Court in Tennessee Central Railway Co. v. McCowan, 28 Tenn. App. 225, 188 S. W.

2d 931, in which the question of the burden of proof was fully discussed.

No new questions arising from the petition to rehear it is denied at the cost of petitioner.

Petition to rehear denied.

Felts and Hickerson, JJ., concur.